UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------x

In re

STEPHEN NICHOLAS,

                 Debtor.

Chapter 7

Case No. 07-73330-CEC

---------------------------------------------------------x

STEPHEN NICHOLAS,

                Plaintiff,

   -against-

MATTHEW E. OREN,

                Defendant.

Adv. Proc. 07-08222-CEC

---------------------------------------------------------x

MATTHEW OREN,

                Plaintiff,

   -against-

HARVEY BERNSTEIN, et al.,

                Defendants.

Adv. Proc. 11-01026-CEC

---------------------------------------------------------x

## <u>DECISION</u>

APPEARANCES:

Avrum J. Rosen, Esq.
Law Offices of Avrum J. Rosen
38 New Street
Huntington, New York 11743
Attorney for Stephen Nicholas

Matthew E. Oren
77-17 138th Street
Flushing, New York 11367
Pro Se

Thomas W. Hyland, Esq.
Wilson Elser Moskowitz Edelman & Dicker LLP
150 East 42nd Street
New York, NY 10017-5639
Attorney for Rosen Defendants

Cynthia M. Burke, Esq.
265 Post Avenue, Suite 120
Westbury, NY 11590
Attorney for Stephen Nicholas

Alan B. Katz, Esq.
14 Dubon Court
Farmingdale, NY 11735
Pro Se

Alfred A. D'Agostino, Jr., Esq.
D'Amato & Lynch, LLP
Two World Financial Center
New York, NY 10281
Attorney for Harvey Bernstein

CARLA CRAIG
Chief United States Bankruptcy Judge

Before the Court are two motions: first, a motion by Stephen Nicholas ("Nicholas" or the "Debtor"), Nicholas's attorneys, the Law Offices of Avrum J. Rosen, PLLC, Avrum J. Rosen, Fred S. Kantrow, and Allan Katz, and Nicholas's real estate broker, Harvey Bernstein (collectively, the "Defendants") to dismiss pursuant to Rule 12(c) the complaint of Matthew Oren ("Oren"), a pro se party, in an action that was removed from state court; and second, a motion by the Debtor pursuant to §524 and §105 to hold Oren in contempt for violating the discharge granted to him pursuant to §1328 upon the completion of his Chapter 13 plan by commencing and pursuing that action.[1]  Oren opposes both motions.

This Court finds that each cause of action in Oren's complaint, which seeks relief on various theories based upon events which occurred shortly before or during Nicholas's bankruptcy case, either fails to state a claim upon which relief can be granted, or must be dismissed under the doctrines of res judicata and collateral estoppel by virtue of decisions and orders previously entered in this bankruptcy case.  The Court also finds that Oren's continued efforts to obtain recovery on pre-petition claims against Nicholas constitute a violation of Nicholas's discharge injunction.  Accordingly, Defendants' motion to dismiss and Debtor's motion to hold Oren in contempt are granted.  The cross motion and cross application filed by Oren are denied, for the reasons set forth below.

## BACKGROUND

The following is a brief review of the factual and procedural history of the case.

In May, 1999, Nicholas purchased a cooperative apartment (the "Apartment") from Oren, and to finance the purchase, executed a Secured Promissory Note (the "Note") in favor of Oren in the amount of $44,000.00, secured by Nicholas's interest in the Apartment.

---

[1] Unless otherwise indicated, statutory citations are to provisions of Title 11, U.S.C.; citations to "Rules" are to the Federal Rules of Civil Procedure; and citations to "Bankruptcy Rules" are to the Federal Rules of Bankruptcy Procedure.

On or about July 11, 2007, Nicholas entered into a contract to sell his interest in the apartment for $100,000.

On or about July 19, 2007, Oren declared Nicholas in default on the Note, which provided for a default interest rate of 19.6%.

On August 27, 2007, Nicholas commenced this case under Chapter 13 of the Bankruptcy Code. Shortly thereafter, he commenced Adversary Proceeding No. 07-8222 against Oren (the "Adversary Proceeding"), seeking to compel Oren to turnover documentation needed by Nicholas to close the sale of the Apartment. (Compl. at ¶ 19, ECF No. 1).[2] Nicholas was represented in this bankruptcy case and in the Adversary Proceeding by the Law Offices of Avrum J. Rosen, PLLC and Avrum J. Rosen. Oren appeared pro se at all times in this bankruptcy case and in the Adversary Proceeding.

On September 7, 2007, the Debtor filed an amended complaint against Oren, additionally seeking, among other things, a determination of the amount of Oren's secured claim; a judgment declaring the Note void on the basis of usury; a judgment declaring that Oren is not entitled to collect compound interest on the Note; and an order fixing the maximum allowable interest rate on the Note. (Am. Compl. at pp. 13-14, ECF No. 5).

On September 27, 2007, the Honorable Dennis E. Milton, to whom this case was then assigned, issued an order authorizing the Debtor to consummate the sale of the Apartment, which subsequently occurred. (Order Directing Matthew Oren to Produce Documents and Allow for Closing at p. 2, Bankr. ECF No. 21). Nicholas then filed an amended Chapter 13 plan on October 11, 2007, which provided for the payment in full of all creditors, including Oren, from the proceeds of the sale of the Apartment. (Am. Chapter 13 Plan at p. 1, Bankr. ECF No. 24).

---

[2] Citations to "ECF No." are to papers filed on the docket of the Adversary Proceeding; citations to "Bankr. ECF No." are to papers filed on the docket of this bankruptcy case; and citations to "Removed ECF No." are to Adversary Proceeding No. 11-1026, the state court action commenced by Oren that was removed to this Court.

On January 3, 2008, Oren filed a proof of claim in this bankruptcy case in the amount of $81,471.21.

On February 15, 2008, Nicholas filed a motion for summary judgment in the Adversary Proceeding.  (Mot. for Summ. J., ECF No. 15).  In response, Oren filed a cross-motion seeking, among other things, 1) dismissal of the amended complaint; 2) an order awarding Oren a priority claim in Nicholas's bankruptcy case in the amount of at least $96,259.72; and 3) a hearing with respect to sanctioning Debtor's attorneys.  (Cross-Mot. for Summ. J. at pp. 4-11, ECF No. 33).

On November 14, 2008, this Court entered an Order confirming Nicholas's Chapter 13 plan.  (Order Confirming Plan, Bankr. ECF No. 51).

In a Decision and Order dated June 5, 2009, Judge Milton denied Oren's cross-motion except "to the limited extent it seeks an Order fixing [Oren]'s claim."  (Decision and Order on Applications for Summ. J. at p. 3, ECF No. 42).  Judge Milton also denied Nicholas's motion to the extent that it sought to void the Note based on usury, but granted the motion to the extent that it sought to prevent the compounding of interest on the Note.  Id.  The Court instructed both parties to submit recalculations of Oren's claim to assist the Court in fixing the claim.  Id. at 9.

On June 17, 2009, Oren made a request by letter for an extension of time to submit the recalculation of his claim and to appeal or file a motion for reconsideration of Judge Milton's Decision and Order dated June 5, 2009.  (Req. for Extension of Time, ECF No. 43).

In a June 26, 2009 letter and Order, Judge Milton granted Oren a thirty day extension for the submission of a recalculation of his proof of claim, but denied Oren's request for an extension of time to file an appeal or to make a motion for reconsideration of the Decision and Order dated June 5, 2009.  (Letter and Order Denying Requests for Time Extension, ECF No. 45).

On September 1, 2009, after receiving the parties' recalculations, Judge Milton issued a Decision and Order fixing Oren's proof of claim at $48,076.30. (Decision and Order on Appl.'s for Summ. J. Following Submission of Parties' Calculations at p. 6, ECF No. 51).

On September 11, 2009, Oren made an application to Judge Milton seeking, among other things: 1) reconsideration of his June 5, 2009 and September 1, 2009 Decisions and Orders under Rule 59, 2) relief from the June 5, 2009 and September 1, 2009 Decisions and Orders under Rule 60, and 3) an extension of time to appeal both Decisions pursuant to Bankruptcy Rule 8002. (Notice of Mot. Inter Alia Pursuant to Rules 7052, 7059, 7060 and/or 8002, ECF No. 52).

On September 14, 2009, the Chapter 13 Trustee certified that Nicholas had completed his Chapter 13 plan, and on October 6, 2009, an order was issued granting Nicholas a discharge pursuant to §1328. (Order Discharging Debtor, Bankr. ECF No. 61).

In a March 31, 2010 Decision and Order, Judge Milton denied all of Oren's requests for reconsideration and extension of time to appeal. (Decision and Order, ECF No. 57). Judge Milton found Oren's application for reconsideration of his Decision and Order dated June 5, 2009 under Rule 59 to be untimely. Id. at 3. Judge Milton denied Oren's other applications for reconsideration on the grounds that Oren failed to allege any new evidence or change in law that would impact the Court's rulings. Id. at 4-5. Judge Milton denied Oren's application to extend his time to appeal on the grounds that the Chapter 13 Trustee already distributed to all creditors the amounts required to be paid to them under the Chapter 13 plan, the Debtor received his discharge, and Oren failed set forth a basis upon which the discharge could be set aside. Id. at 5.

On April 14, 2010, Oren filed a notice of appeal to the United States District Court for the Eastern District of New York, seeking reversal of all three of Judge Milton's decisions in Nicholas's bankruptcy case. (Notice of Appeal to District Ct., ECF No. 60). On December 8,

2010, the District Court dismissed that appeal with prejudice for Oren's failure to prosecute the appeal.  (Final Order by District Ct. Judge Roslynn R. Mauskopf, ECF No. 64).

On June 5, 2010, Oren, again acting pro se, commenced an action against the Defendants in the Supreme Court of the State of New York for the County of Queens (the "State Court Action").  (Compl. at Ex. A, Removed ECF No. 1).  In Oren's complaint (the "Complaint"), he alleged that the Defendants committed a variety of torts against him in an effort to induce this Court to reduce or void his proof of claim, to interfere with his business relationship with Nicholas, and to damage his reputation.  Id.

Specifically, Oren asserts eight causes of action against the Defendants: 1) malicious prosecution and abuse of process; 2) attempted coercion by the Defendants through the threatening of this alleged malicious prosecution; 3) fraudulent misrepresentations made to the court regarding the calculation of Oren's claim; 4) unjust enrichment of the Defendants resulting from the allegedly fraudulent misrepresentations made to Judge Milton; 5) libel and slander; 6) fraudulent misrepresentations by the Debtor to Oren regarding an alleged "deed in lieu of foreclosure" agreement; 7) against Harvey Bernstein, tortious interference with that alleged agreement; 8) unjust enrichment of Harvey Bernstein due to this alleged interference.[3]  Id.

On October 18, 2010, Nicholas moved to reopen this bankruptcy case.  (Mot. to Reopen Chapter 13 Case, Bankr. ECF No. 65).  That motion was granted, and this case was reopened by Order entered November 3, 2010.  (Order Reopening Chapter 13 Case, Bankr. ECF No. 74).  On January 7, 2011, Nicholas moved to hold Oren in contempt for violating the discharge injunction by commencing and prosecuting the claims against him in the State Court Action.  (Mot. for Contempt against Matthew Oren, Bankr. ECF No. 78).  On January 26, 2011, a hearing was held

---

[3] In this decision, Oren's causes of action are grouped in an order different from the order in which they appear in the Complaint, to facilitate discussion.

on that motion, shortly before which Oren filed a cross-application seeking various forms of

relief.  (Cross-Appl. in Resp. to Mot. for Contempt, Bankr. ECF No. 83).

After removing the State Court Action to the bankruptcy court, the Defendants moved for

judgment on the pleadings.  (Mot.'s for J. on the Pleadings, Removed ECF Nos. 6, 14, 18, 21).

On May 16, 2011, Oren filed a cross-motion in opposition to the Defendants' motion for

judgment on the pleadings.  (Cross-Mot. in Opp'n to Mot.'s for J. on the Pleadings, Removed

ECF No. 24).  A hearing was held on the Defendants' motion on May 19, 2011.

JURISDICTION

This Court has jurisdiction over all of these core proceedings under 28 U.S.C. §1334(b)

and 28 U.S.C. §§ 157(b)(1), 157(b)(2)(A), and 157(b)(2)(B), and the Eastern District of New

York standing order reference dated August 28, 1986.  This decision constitutes the Court's

findings of fact and conclusions of law to the extent required by Bankruptcy Rule 7052.

Oren's first, second, and fifth causes of action, in which he alleges that the Adversary

Proceeding constituted malicious prosecution, abuse of process, libel, slander, and coercion, are

core proceedings pursuant to 28 U.S.C. §157(b)(1), because each of those causes of action arises

in a case under title 11.

Oren's third and fourth causes, in which he claims that the Defendants perpetrated a fraud

on the Court to induce the Court to reduce his claim in the bankruptcy case, are also core

proceedings.  These causes of action arise in Nicholas's bankruptcy case, and, in substance, seek

a recalculation of Oren's claim against the Debtor.  Determining the liabilities of the debtor is at

the core of bankruptcy jurisdiction. 28 U.S.C. § 157(b)(2)(B); see also S.G. Phillips

Constructors, Inc., 45 F.3d 702, 705 (2d Cir. 1995).

The Debtor's motion to dismiss Oren's sixth cause of action is also a core proceeding, because the Debtor seeks dismissal on the basis that the claim is barred by his discharge. Enforcement of the Debtor's discharge is a core proceeding.  See In re Nat'l Gypsum Co., 118 F.3d 1056, 1064 (5th Cir. 1997) ("[A] proceeding to enforce or construe a bankruptcy court's section 524(a) discharge injunction …necessarily arises under title 11…").

Oren's seventh and eighth causes of action, in which Harvey Bernstein, the real estate broker who was retained with court approval in Nicholas's bankruptcy case, is alleged to have engaged in tortuous interference, and to have been unjustly enriched by the court order compensating him for his services, is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2)(A). Moreover, to the extent Oren's seventh and eighth causes of action challenge the orders of this Court, "[b]ankruptcy courts retain jurisdiction to enforce and interpret their own orders." In re Millenium Seacarriers, Inc., 419 F.3d 83, 97 (2d Cir. 2005).

Finally, the Debtor's motion to hold Oren in contempt for violating §524 arises under Title 11 and is therefore a core proceeding pursuant to 28 U.S.C. § 157 (b)(1).

DISCUSSION

I.    <u>Defendants' Motion for Judgment on the Pleadings</u>

Defendants assert two bases for judgment on the pleadings: first, they contend that certain of Oren's causes of action are barred by the doctrines of res judicata and collateral estoppel; and second, they argue that Oren has failed to allege facts sufficient to state a claim with respect to any of the causes of action asserted in the Complaint.

A motion for judgment on the pleadings is governed by Bankruptcy Rule 7012(b), which incorporates Rule 12(c).  In reviewing a motion for judgment on the pleadings, the Court is required to accept all factual allegations of the Complaint as true and make all inferences in favor of the non-moving party.  Cleveland v. Caplaw Enterprises, 448 F.3d 518, 521 (2d Cir. 2006).

A motion to dismiss under Rule 12(c) is analyzed under the same standard as a Rule 12(b)(6) motion to dismiss. Id. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Therefore, in reviewing Oren's complaint, it is necessary to determine whether Oren "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, at 556).

A.    Cause of Action One: Malicious Prosecution and Abuse of Process

Oren alleges that the Adversary Proceeding – in which Nicholas sought to (1) void Oren's Note on grounds of usury, (2) prevent Oren from recovering compounded interest, and (3) sanction Oren – constituted malicious prosecution and an abuse of process. In support of these causes of action, Oren asserts that the Adversary Proceeding was "*per se* unfounded and malicious" as well as "frivolous and initiated…for coercive purposes." (Compl. at Ex. A at 6-7, Removed ECF No. 1).

Although "[t]he torts of malicious prosecution and abuse of process are closely allied," they are distinct. Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994). Malicious prosecution "concerns the improper issuance of process," while abuse of process addresses the "improper use of process after it is regularly issued." Id. (citation omitted). The two causes of action will therefore be analyzed separately.

Under New York law, in order to state a claim for malicious prosecution, a plaintiff must allege "(1) the initiation of an action by the defendant against the plaintiff, (2) begun with malice, (3) without probable cause to believe it can succeed, (4) that ends in failure or, in other

words, terminates in favor of the plaintiff."  Sankin v. Abeshouse, 545 F.Supp.2d 324, 327

(S.D.N.Y. 2008) (citing O'Brien v. Alexander, 101 F.3d 1479, 1484 (2d Cir. 1996)).  When the

prior action is civil in nature, the plaintiff must also show a special injury.  Sankin, 545

F.Supp.2d at 327 (citing Engel v. CBS, Inc., 711 N.E.2d 626 (N.Y. 1999)).  "[B]urdens

substantially equivalent to those imposed by provisional remedies are enough" to satisfy the

special injury requirement, although "[a]ctual imposition of a provisional remedy need not occur.

. ."  Engel, 711 N.E.2d at 631.[4]

        Even viewed in the light most favorable to him, Oren's factual allegations are insufficient

to plead a claim of malicious prosecution.  Putting aside whether Oren has adequately pleaded

the elements of malice, or whether the Adversary Proceeding concluded in a manner favorable to

him, Oren clearly has failed to allege any form of special injury.  Nicholas never sought a

provisional remedy in the Adversary Proceeding, and Oren never suffered burdens substantially

similar to those imposed by provisional remedies.  Moreover, in discussing the special injury

requirement, the Court of Appeals of New York has stated that "the defendant must abide some

concrete harm that is considerably more cumbersome than the physical, psychological or

financial demands of defending a lawsuit." 711 N.E.2d at 631.  Here, Oren alleges nothing more

than the burdens associated with defending a lawsuit: he asserts that the alleged malicious

prosecution caused "immense grief, worry, expense, injury health, and wasted time…" (Compl.

at Ex. A at ¶ 23, Removed ECF No. 1).  These claimed injuries are not of the type necessary to

sustain a malicious prosecution claim in New York.  Accordingly, Oren's claim for malicious

prosecution must be dismissed.

---

[4] Section 6001 of the New York Civil Practice Law and Rules creates provisional remedies which litigants may
invoke prior to obtaining a judgment.  Those remedies consist of "attachment, injunction, receivership and notice of
pendency."  N.Y. C.P.L.R. 6001 (McKinney 2010). Bankruptcy Rules 7064 and 7065 provide that these remedies
are also available in adversary proceedings.  None of those remedies were sought or granted in the Adversary
Proceeding.

To state a claim for abuse of process, a plaintiff must allege "(1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective." Curiano v. Suozzi, 469 N.E.2d 1324, 1326 (N.Y. 1984) (citing Board of Educ. v. Farmingdale Classroom Teachers Ass'n, 343 N.E.2d 278 (N.Y. 1975)). To succeed on an abuse of process claim, a party must demonstrate more than the initiation and pursuit of a lawsuit. See Curiano, 469 N.E.2d at 1326 ("[T]he institution of a civil action by summons and complaint is not legally considered process capable of being abused.") (citing Hoppenstein v. Zemek, 403 N.Y.S.2d 542 (App. Div. 1978)).

Oren points to no use of process beyond the commencement of the Adversary Proceeding, allegedly for malicious reasons. "A malicious motive alone, however, does not give rise to a cause of action for abuse of process." Curiano, 469 N.E.2d at 1326 (citation omitted). Oren has failed to plead the essence of an abuse of process claim: that the Defendants' "use of process" was done "in a perverted manner to obtain a collateral objective." Id. at 116. Oren's assertion that the Adversary Proceeding was unjust or frivolous does not suffice to allege a "collateral objective." This cause of action must be dismissed because Oren has not pleaded "factual content that allows [this] Court to draw the reasonable inference" that the Adversary Proceeding was used to accomplish something beyond what it sought on its face, i.e. the disallowance of his claim against Nicholas. Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).

B.    Cause of Action Two: Threat of Litigation

In his second cause of action, Oren alleges that Defendant Rosen and Kantrow attempted to coerce him to abandon his efforts to foreclose on the apartment by threatening and commencing the allegedly malicious Adversary Proceeding on behalf of Nicholas. Oren further

alleges that this lawsuit was "aided and abetted" by Katz.  (Compl. at Ex. A at ¶ 34, Removed ECF No. 1).  While the legal basis for this cause of action is unclear, to the extent that Oren is seeking recovery based upon allegations that the Adversary Proceeding was commenced for malicious reasons, the claim is duplicative of Oren's claims of malicious prosecution and abuse of process, and must be dismissed on the same grounds.

To the extent Oren may be seeking to assert a claim based upon allegations of threatening a malicious prosecution, the cause of action must also be dismissed.  While the threat of litigation can give rise to other claims, such as tortious interference, New York law does not recognize an independent cause of action for threatening litigation.  Moreover, under the facts alleged by Oren, the alleged threatened litigation could not even serve as a basis for tortious interference.

 For the purposes of a tortious interference claim, "a lawsuit or the threat of a lawsuit is wrongful 'if the actor has no belief in the merit of the litigation.'  It is also wrongful if the actor, having some belief in the merit of the suit, 'nevertheless institutes or threatens to institute the litigation in bad faith, intending only to harass the third parties and not to bring his claim to definitive adjudication.'"  Universal City Studios, Inc. v. Nintendo Co., Ltd.  797 F.2d 70, 75 (2d Cir. 1986) (quoting Restatement (Second) of Torts § 767, cmt. c (1979)).

Here, there is no credible allegation that Nicholas did not believe in the merit of the Adversary Proceeding.  The suit was pursued to definitive adjudication, Oren's claim was fixed, and Nicholas paid Oren's claim in full.  Moreover, there is no credible allegation that the Adversary Proceeding was intended to coerce Oren to abandon his efforts to foreclose.  In fact, the Adversary Proceeding was not, and by definition could not have been, commenced until after

Nicholas filed for bankruptcy, at which time the automatic stay already prevented Oren from foreclosing. For these reasons, this cause of action must be dismissed.

With respect to Oren's claim of aiding and abetting against Katz, "[a]iding and abetting liability arises only where an underlying violation has taken place." <u>Summa v. Hofstra Univ.</u>, 2011 WL 1343058, at *25 (E.D.N.Y. 2011). Therefore, because Oren has failed to sufficiently plead an underlying violation, his claim against Katz for aiding and abetting must be dismissed as well.

      C.      <u>Cause of Action Three: Fraudulent Misrepresentation and Fraud on the Court</u>

In Oren's third cause of action, he alleges that the Defendants misrepresented the proper calculation of the interest on his proof of claim "to fraudulently induce [Judge Milton]…in short changing the amount of [Oren's] claim." (Compl. at Ex. A at ¶ 22, Removed ECF No. 1). Oren asserts that the Defendants "intentionally misrepresented that the lawful simple interest negative amortization computation" Oren used in his calculation was "an illegal charging of compound interest." <u>Id.</u> Oren argues that Judge Milton relied on this fraudulent misrepresentation in fixing his proof of claim. The Defendants contend that this cause of action is merely an attempt to relitigate the fixing of Oren's proof of claim, which was the subject of a final decision and order by Judge Milton, and therefore is barred by the doctrines of res judicata and collateral estoppel. This Court agrees.

Under the doctrine of res judicata, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in the action." <u>Federated Dep't Stores, Inc. v. Moitie</u>, 452 U.S. 394, 398 (1981) (citations omitted). Res judicata is applicable where there has been "(1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and

(4) involving the same cause of action." EDP Med. Computer Sys., Inc. v. U.S., 480 F.3d 621, 624 (2d Cir. 2007) (citation omitted).

Judge Milton's September 1, 2009 Decision and Order fixing Oren's proof of claim at $48,076.30 was a final judgment.  In EDP Med., the Second Circuit expressly rejected the argument that the allowance of a proof of claim was not "on the merits" or a "final judgment" for res judicata purposes, even when uncontested.  Id. at 626.  The court explained that "[r]es judicata does not require the precluded claim to actually have been litigated; its concern, rather, is that the party against whom the doctrine is asserted had a full and fair opportunity to litigate the claim."  Id.  Here, Oren had ample opportunity to litigate the amount of his claim and in fact submitted his own calculation to Judge Milton.  Accordingly, the September 1, 2009 Order fixing Oren's claim was clearly a final order.

Judge Milton's Decision and Order fixing Oren's proof of claim was also clearly a determination by a court of competent jurisdiction.  "Allowance or disallowance of claims against the estate" are core proceedings.  28 U.S.C. § 157(b)(2)(B) (2006).  Indeed, "[n]othing is more directly at the core of bankruptcy administration… than the qualification of all liabilities of the debtor…"  In re S.G. Phillips Constructors, Inc., 45 F.3d 702, 705 (2d Cir. 1995) (alteration in original) (citation omitted).

When considering the third element of res judicata, courts look to whether "the party against whom claim preclusion is sought has, in essence, already received his or her day in court, and the application of *res judicata* would not alter this conclusion."  Pharr v. Evergreen Garden, Inc., 123 Fed. App'x 420, 424 (2d Cir. 2005).  Oren had ample opportunity, of which he availed himself, to litigate the amount of his claim.  His assertion now that Defendants' submissions contained fraudulent misrepresentations concerning the proper calculation of interest is nothing

more than a collateral attack on the Order fixing his claim.  As the Supreme Court has explained, "a creditor who offers a proof of claim and demands its allowance is bound by what is judicially determined … and if his claim is rejected, its validity may not be relitigated in another proceeding on the claim."  Katchen v. Landy, 382 U.S. 323, 334 (1966) (citations omitted).

As to the fourth element of res judicata, Oren's claim that Defendants engaged in fraudulent misrepresentation in their presentation to Judge Milton of the appropriate calculation of his claim, addresses the same issues that were addressed in the Adversary Proceeding.  A transactional approach is used to determine whether claims, asserted in different proceedings, are the same for res judicata purposes.  Clarkstown Recycling Ctr., Inc. v. Parker, Chapin, Flattau & Kimpl, LLP, 1 F.Supp.2d 327, 329 (S.D.N.Y.1998).  Applying this approach, the court must determine whether the two actions involve the same transaction, evidence, and facts.  Sure-Snap Corp. v. State St. Bank & Trust Co., 948 F.2d 869, 874 (2d Cir. 1991).  Oren's claim of fraudulent misrepresentation in the State Court Action involves the identical transaction, evidence, and facts as the claims litigated in the Adversary Proceeding concerning the appropriate method of calculating Oren's claim, and the amount of interest he was legally entitled to charge. These claims all relate to the calculation of Oren's proof of claim, and therefore this element of res judicata is satisfied as well.

In addition to res judicata, the doctrine of collateral estoppel also bars Oren's claim of fraudulent misrepresentation.  "Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979) (citation omitted).  Collateral estoppel, however, is a narrower doctrine than res judicata, and serves to preclude parties from relitigating

specific issues that were "raised, litigated, and actually decided by a judgment in a prior proceeding, regardless of whether the two suits are based on the same cause of action." In re Adler, 395 B.R. 827, 835 (E.D.N.Y. 2008) (quoting Balderman v. U.S. Veterans Admin., 870 F.2d 57, 62 (2d Cir.1989)).

For collateral estoppel to be applied, the decisive issue in the present action must have been decided in an earlier action, and the party to be precluded must have had a full and fair opportunity to litigate the issue. Swiatkowski v. Citibank, 745 F.Supp.2d 150, 168 (E.D.N.Y. 2010) (citing In re Hyman, 502 F.3d 61, 65 (2d Cir.2007)). Here, the issues raised by this cause of action were fully litigated and decided by Judge Milton. Oren's claim for fraudulent misrepresentation must be dismissed.

Equally fatal to Oren's claim of fraudulent misrepresentation is that the alleged misrepresentations made to Judge Milton in the Adversary Proceeding cannot in any event constitute a basis for a claim of fraud. To state a claim for fraudulent misrepresentation, a party must plead: "(i) a misrepresentation of an existing material fact; (ii) knowingly or recklessly made by one party to another; (iii) with the intent to deceive; (iv) which misrepresentation is justifiably relied upon; (v) to the detriment of the party relying on it." In re Ticketplanet.com, 313 B.R. 46, 59 (Bankr. S.D.N.Y. 2004) (quoting Murray v. Xerox Corp., 811 F.2d 118, 121 (2d Cir. 1987)). Here, Oren does not allege that he relied on any statements made by Nicholas or his attorney in their submissions to Judge Milton concerning the calculation of his claim, nor could any such reliance, if alleged, be justifiable. Pettis v. Haag, 923 N.Y.S.2d 745, 747 (App. Div. 2011) ("Justifiable reliance does not exist where a party has the means to discover [a falsehood] by the exercise of ordinary intelligence, and fails to make use of those means.") (alteration in original) (citation omitted). Oren obviously knew that Nicholas was his adversary in the

litigation before Judge Milton, and knew that Nicholas's calculation of the proper amount of his claim under the Note differed from his own.  He had an opportunity to submit an alternative calculation to Judge Milton and to point out any alleged errors in Nicholas's submission, and in fact did so.  Under these circumstances, reasonable reliance is impossible.[5]

Nor can Oren's factual allegations form the basis for a claim of fraud on the court.  In Ticketplanet.com, the court outlined the elements of a claim for fraud on the court, as recognized by the Second Circuit in Leber-Krebs, Inc. v. Capital Records, 779 F.2d 895 (2d Cir. 1985): "(1) the defendant's misrepresentation to the court; (2) the impact on the motion as a consequence of that misrepresentation; (3) the lack of an opportunity to discover the misrepresentation and either bring it to the court's attention or bring an appropriate corrective proceeding; and (4) the benefit the defendants derived by inducing the erroneous decision."  Ticketplanet.com, 313 B.R.at 64.

Here, Oren has not alleged, nor can he plausibly do so, that he lacked an opportunity to discover any misrepresentation concerning the appropriate calculation of his claim, and to bring it to the Court's attention.  Indeed, he availed himself of that opportunity, both in submissions made before his claim was fixed and in motions for reconsideration.  No claim for fraud on the court can be maintained on these facts.

Oren's claims of fraudulent misrepresentation are strikingly similar to claims that were found insufficient to support a motion to set aside a judgment on the basis of fraud in Provident Savings Bank v. Popovich, 71 F.3d 696 (7th Cir. 1995).  There, a pro se defendant sought relief from an adverse judgment on the basis of fraud pursuant to Rule 60(b)(3).  The parties' dispute centered upon the meaning of a clause in a guaranty that permitted enforcement by assigns.  The

---

[5] Oren also advanced a theory at oral argument that Nicholas and his attorneys made a fraudulent misrepresentation when they argued to Judge Milton that Oren's request for reconsideration, or request for additional time to seek reconsideration, filed on June 17, 2009, was untimely.  Here, too, there can be no claim by Oren of reliance; Oren had equal access to information concerning the time of the filing of his request and the applicable rules could have corrected any misstatement made.

court rejected the defendant's contention that the plaintiff made a misrepresentation when it took

the position that defendant was personally liable on the guaranty:

> [T]he parties' competing positions on this issue amount to nothing more than differing legal theories as to the significance of undisputed facts.  This purely legal dispute has nothing to do with misrepresentation or misconduct.  [Plaintiff] merely adopted a litigation position and presented it to the district court.  In our adversarial system, the obligation to present the contrary legal argument fell on [Defendant], not [Plaintiff]. . . . As we have already noted, [Plaintiff's] pursuit of a litigation position favorable to its own interests did not prevent [Defendant] from presenting a contrary theory to the district court.  [Plaintiff] hid no facts, withheld no documents and employed no obstructionist tactics. . . . [Defendant] seems to be suggesting that [Plaintiff] be held to a special standard, based on his own pro se status, under which it would have been required to present his position as well as its own.  But that suggestion is simply without support in our law.  [Plaintiff] did not prevent [Defendant] from presenting his case to the court, and it certainly did not commit misconduct by failing to do so for him."

Id. at 699-700.

For all of these reasons, Oren's claim based on misrepresentation in the Adversary

Proceeding must be dismissed.

### D.    Cause of Action Four: Unjust Enrichment

Oren's fourth cause of action alleges unjust enrichment against Defendants Nicholas,

Katz, the Law of Offices of Avrum Rosen, Rosen, and Kantrow with respect to the alleged

fraudulent misrepresentation about the calculation of Oren's proof of claim to Judge Milton.

This cause of action is duplicative of Oren's cause of action alleging fraudulent

misrepresentation or fraud on the court.  Again, Oren seeks to relitigate issues already the subject

of final orders of this Court.  Because the doctrines of res judicata and collateral estoppel are as

applicable to this cause of action as they were to Oren's third cause of action, and because no

claim of fraudulent misrepresentation or fraud on the court has been stated, Oren's claim of

unjust enrichment is dismissed.

E.  Cause of Action Five: Libel and Slander

Oren alleges the Defendants libeled and slandered him in pleadings and in court before Judge Milton in Nicholas's bankruptcy case by "falsely accusing [Oren] of being a usurer and a serial violator of compound interest prohibitions." (Compl. at Ex. A at 14, Removed ECF No. 1).

Libel and slander are two types of defamation, distinguishable primarily on the basis of whether the defamatory statement is written or oral.  See Albert v. Loksen, 239 F.3d 256, 265 (2d Cir. 2001) ("Generally, spoken defamatory words are slander; written defamatory words are libel.") (citations omitted).

Here, it is not necessary to address whether Oren has adequately pleaded elements of libel or slander, because the Defendants' statements fall within the absolute privilege defense to defamation claims.  "Under New York law, 'in the context of a legal proceeding, statements by parties and their attorneys are absolutely privileged if, by any view or under any circumstances, they are pertinent to the litigation.'"  Reserve Solutions Inc. v. Vernaglia, 438 F.Supp.2d 280, 289-90 (S.D.N.Y. 2006) (quoting O'Brien v. Alexander, 898 F.Supp. 162, 171 (S.D.N.Y.1995) (citing Grasso v. Mathew, 564 N.Y.S.2d 576, 578 (App.Div.3d Dep't.1991)).

In determining whether a statement relates to litigation, the privilege is interpreted broadly.  In New York, "[t]he absolute privilege embraces anything that may possibly or plausibly be relevant or pertinent, with the barest rationality, divorced from any palpable or pragmatic degree of probability."  Grasso, 564 N.Y.S.2d at 578.  The intent with which the statement is made is irrelevant, as the absolute privilege defense "confers immunity from liability regardless of motive."  O'Brien, 898 F.Supp. at 171 n.14 (quoting Park Knoll Associates v. Schmidt, 451 N.E.2d 182, 184 (N.Y. 1983)).

The alleged defamatory statements were clearly related to litigation; they related to the charging of interest and were made in pleadings regarding the calculation of Oren's claim against Nicholas's bankruptcy estate.   The fact that this Court ultimately determined not to void the Note on account of usury in no way constitutes evidence that the statements in question were defamatory in nature or places those statements outside the scope of the absolute privilege that attaches to statements made in the context of litigation.   Therefore, Oren's claims of libel and slander against the Defendants are dismissed.

F.    Cause of Action Six: Fraudulent Misrepresentation

Oren's sixth cause of action seeks damages arising from an alleged agreement between Nicholas and Oren that, in the event of a default on the Note, Nicholas would provide Oren with a deed in lieu of foreclosure.   Oren alleges that Nicholas represented to Oren that he would honor this agreement to induce Oren "not to foreclose on the subject Unit."   (Compl. at Ex. A at 15, Removed ECF No. 1).   Oren argues that, but for Nicholas's misrepresentations that he would adhere to their alleged agreement, he would have foreclosed, and that Nicholas was thereby unjustly enriched.

In determining whether this claim should be dismissed, it is unnecessary to address the elements of unjust enrichment or fraudulent misrepresentation.   Every fact alleged by Oren in support of this cause of action occurred before Nicholas filed for bankruptcy.   Therefore, even if Oren could satisfy all the elements of fraudulent misrepresentation or unjust enrichment (which, for reasons discussed below, he cannot), this cause of action would constitute a pre-petition claim, which was discharged pursuant to §1328(a), upon the completion of Nicholas' bankruptcy.

The fact that Oren did not file proof of this claim, and therefore no determination was made concerning its allowability, nor any payment made on it, does not change this result.  See Bankruptcy Rule 3002.  "A discharge under Chapter 13 'is broader than the discharge received in any other chapter.'"  United Student Aid Funds, Inc. v. Espinosa,130 S. Ct. 1367, 1376 (2010) (quoting 8 Collier on Bankruptcy ¶ 1328.01, p. 1328-5 (rev. 15th ed.2008)).  Section 1328(a) provides in relevant part that: "the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502."  11 U.S.C. § 1328(a) (2006).

In determining whether a "claim" is provided for by the plan, the relevant inquiry is whether the plan "make[s] a provision for it, i.e. deal[s] with it or refer[s] to it."  In re Daniel, 107 B.R. 798, 802-03 (Bankr.N.D.Ga. 1989) (quoting Lawrence Tractor Co. v. Gregory (In re Gregory), 705 F.2d 1118, 1122 (9th Cir. 1983)).  "[A] debtor need not specifically list unsecured creditors by name in the plan in order for the court to find that the plan provides for this class of claims."  In re LC Carouthers, Jr., 2011 WL 2181383, at *3 (Bankr. W.D. Mich. May 27, 2011).   Indeed, "[m]any plans . . . refer only generally to unsecured creditors."  Id.  Here, Nicholas's plan provided for the full payment of all unsecured claims, which would have included Oren's sixth cause of action, if Oren had filed a proof of claim, and the claim had been allowed.

Oren does not and could not dispute that he was aware of Nicholas's bankruptcy, given that he was a scheduled creditor and filed a proof of claim with respect to the amount owed to him under the Note, which was paid in full under the Chapter 13 plan. To permit Oren's sixth cause of action to survive Nicholas's discharge would be to allow

Oren to reap the benefits of this bankruptcy case on one claim, while avoiding the consequences of Nicholas's discharge in bankruptcy on another.

Even if Oren's claim that Nicholas fraudulently misrepresented that he would give Oren a deed in lieu of foreclosure were not discharged, New York law requires that it be dismissed. Section 5-703(3) of the New York General Obligations Law provides that "[a] contract to devise real property or establish a trust of real property, or any interest therein or right with reference thereto, is void unless the contract or some note or memorandum thereof is in writing…" Any alleged unwritten agreement by Nicholas to transfer the apartment to Oren pursuant to a deed in lieu of foreclosure would be void and unenforceable.

Oren attempts to bypass this obstacle by asserting that Nicholas's alleged statement that he would provide Oren with a deed in lieu of foreclosure constituted a fraudulent misrepresentation. However, "[p]laintiffs cannot avoid the Statute of Frauds by arguing that the alleged oral promise was a misrepresentation of fact and that their claim is based on fraud." Nelson Bagel Bakery Co. v. Moshcorn Realty Corp., 734 N.YS.2d 134, 135 (App. D,v. 1st Dep't 2001). Rather, "[w]hatever the form of the action at law may be, if the proof of a promise or contract, void by the [S]tatute [of Frauds] is essential to maintain it, there can be no recovery." Lilling v. Slauenwhite, 535 N.Y.S.2d 428, 430 (App. Div. 2d Dept. 1988) (quoting Dung v. Parker, 52 N.Y. 494, 496 (1873)). Because Oren would be required to prove that Nicholas did promise to convey his interest in the Apartment to him as a predicate for his fraudulent misrepresentation cause of action, this claim is barred by the Statute of Frauds and must be dismissed.

G.    Causes of Action Seven and Eight: Tortious Interference and Unjust Enrichment

In these causes of action, Oren alleges that Harvey Bernstein tortiously interfered with the alleged deed in lieu of foreclosure agreement between Oren and Nicholas, and that Bernstein was unjustly enriched at Oren's expense through that tortious interference.

While it is not clear what form of tortious interference Oren claims, the factual allegations of the Complaint, including the absence of any written agreement by Nicholas to provide a deed in lieu of foreclosure, lead to the conclusion that the only cause of action that would have any potential applicability on these facts would be tortious interference with business relations.  Under New York law, in order to plead a claim of tortuous interference with business relations, a plaintiff must allege: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair or improper means; and (4) the defendant's acts injured the relationship." In re Bernard L. Madoff Inv. Securities LLC (Madoff), 440 B.R. 282, 295 (Bankr.S.D.N.Y. 2010) (quoting Catskill Dev., LLC v. Park Place Entm't Corp., 547 F.3d 115, 132 (2d Cir.2008)).

While Oren alleges that he had a business relationship with Nicholas, which Bernstein interfered with and ultimately injured, Oren does not allege that Bernstein "acted for a wrongful purpose or used dishonest, unfair, or improper means." Id.  To plead this element, Oren must allege a greater degree of culpable conduct than would be required to state a claim for tortious interference with contract.  See Madoff, 440 B.R. at 295 ("While the elements for tortious interference with business relations are similar to the elements for tortious interference with a contract, a plaintiff must show more culpable conduct on the part of the defendant.") (quotations and citations omitted).

"As a general rule, culpable conduct means that 'the defendant's conduct must amount to a crime or an independent tort' or that a defendant acts 'for the sole purpose of inflicting intentional harm on plaintiffs.'" <u>Id.</u> (<u>quoting Carvel Corp.</u>, 3 N.Y.3d 182,190 (2004)).  Here, Oren alleges no such conduct; Oren simply asserts that Bernstein "induced" Nicholas to "breach[] [their] pre-bankruptcy agreement."  (Compl. at Ex. A at p. 17, Removed ECF No. 1). While Oren labels Bernstein's actions as "malicious[] and self-serving[]," he fails to allege any culpable conduct sufficient to state a claim for tortious interference with a business relationship.

To sustain his related unjust enrichment claim against Bernstein, Oren must allege: "(1) that defendant was enriched, (2) at plaintiff's expense, and (3) that the circumstances are such that, in equity and good conscience, defendants should compensate plaintiffs."  <u>TPTCC NY, Inc. v. Radiation Therapy Services, Inc.</u>, 2011 WL 1842197, at *11 (S.D.N.Y. May 16,2011).  Given that this claim is predicated on the same factual allegations as Oren's insufficient claim for tortious interference, the circumstances alleged are not "such that, in equity and good conscience," Bernstein should compensate Oren.  Accordingly, Oren's claim of unjust enrichment is dismissed.

II.    <u>Debtor's Motion to Hold Oren in Contempt</u>

The Debtor seeks to hold Oren in contempt for violating the discharge injunction by commencing and prosecuting claims against him in the State Court Action that were discharged in this bankruptcy case.  The Debtor urges that this violation warrants imposition of sanctions against Oren in the form of actual damages, punitive damages, and attorney's fees, pursuant to §524 and §105.  For the reasons set forth below, this Court finds that Oren willfully violated Nicholas's discharge, and that sanctions are appropriate.

A.    Oren Willfully Violated Nicholas's Discharge

Section 524 enjoins creditors from taking any action to collect on a debt that has been

discharged.  See 11 U.S.C. §524(a)(2) (2006)(prohibiting the "commencement or continuation of

an action, the employment of process, or an act to collect, recover, or offset" a debt or claim that

has been discharged.")  The discharge injunction lies at the heart of one of the fundamental

purposes of bankruptcy law: to give the debtor a fresh start.  See In re Bogdanovich, 292 F.3d

104, 107 (2d Cir. 2002) ("Congress made it a central purpose of the bankruptcy code to give

debtors a fresh start in life and a clear field for future effort unburdened by the existence of the

old debts.")  "There is no serious question that a violation of the discharge provided in §

524(a)(2) is punishable by contempt."  In re Nassoko, 405 B.R. 515, 520 (Bankr. S.D.N.Y. 2009)

(citations omitted).

Here, the Debtor seeks sanctions for civil contempt, which function "to coerce the

defendant into compliance with the court's order, and to compensate the complainant for losses

sustained."  In re Torres, 367 B.R. 478, 490 (Bankr.S.D.N.Y.2007) (quoting Local 28 of Sheet

Metal Workers' Int'l Ass'n v. EEOC, 478 U.S. 421, 443 (1986)).  "[D]etermining whether a

party may be held liable for civil contempt is a two part inquiry: (1) did the party know of the

lawful order of the court, and (2) did the defendant comply with it."  In re McKenzie-Gilyard,

388 B.R. 474, 481 (Bankr.E.D.N.Y. 2007) (quoting In re Puller, 2007 WL 1811209 at *3

(Bankr.N.D.W.Va. Jun. 20, 2007)). Thus, sanctions for civil contempt may be awarded where a

party knowingly violated the discharge injunction.  See In re DiGeronimo, 354 B.R. 625, 642

(Bankr. E.D.N.Y. 2006) (citations omitted) (holding that a violation of the discharge injunction is

willful where "the creditor (1) knew that the discharge had issued, and (2) intended the actions

which violated the discharge injunction.").

There can be no question that Oren knew that the Debtor's discharge had been issued, given his active role in Nicholas's bankruptcy, his receipt of payment under Nicholas's plan, and his receipt of notice of the discharge. Oren has never disputed that he was aware of Nicholas's discharge, and his continuation of the action against Nicholas, even after Nicholas moved to re-open this bankruptcy case to seek to hold Oren in contempt, removes any doubt that Oren was aware of the discharge, and that his actions in pursuing discharged claims against Nicholas were therefore willful.

Oren violated Nicholas's discharge by asserting three of the causes of action stated in the Complaint. The commencement of claims three and four, seeking recovery from Nicholas based upon fraudulent misrepresentations in relation to the fixing of Oren's proof of claim and unjust enrichment as a result of such fraud, constitute the continuation of an effort to collect on Oren's pre-petition secured claim. Oren's sixth cause of action, alleging fraudulent misrepresentation by Nicholas relating to the alleged deed-in-lieu of foreclosure agreement, also constitutes a violation of Nicholas' discharge, for the reasons discussed in Section F above. Accordingly, the elements necessary for a finding of civil contempt are satisfied.

B.    Oren's Violation of Nicholas's Discharge Warrants Sanctions

Nicholas's motion to hold Oren in contempt seeks actual damages, attorney's fees and punitive damages. Bankruptcy courts can issue such relief. See Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 445 (1st Cir. 2000) ("[B]ankruptcy courts across the country have appropriately used their contempt power to order monetary relief, in the form of actual damages, attorney fees, and punitive damages, when creditors have engaged in conduct that violates § 524"). Here, the actual damages alleged by Nicholas consist of his attorney fees. To obtain attorney's fees for violations of the discharge injunction, the plaintiff must establish "that the

defendant acted in bad faith or in a vexatious or oppressive manner." In re Torres, 367 B.R. at 490; see also In re Watkins, 240 B.R. 668, 678 (Bankr. E.D.N.Y. 1999).

In Watkins, the court found bad faith sufficient to justify the awarding of attorney's fees, where, after a creditor's debt was discharged, the creditor contacted the debtors and offered to make a new loan on the condition that the debtors repay the creditor's discharged debt.  The debtors agreed, and the creditor made a loan of $4,000 in exchange for a note in excess of $8,000, which included the discharged debt.  Watkins, 240 B.R. at 672-74.

In Torres, the debtor sought damages for violations of the discharge injunction based on allegations that the defendant bank intentionally refused to correct erroneous information on his credit report regarding a discharged debt.  In denying the bank's motion to dismiss, the court explained that the continued refusal to correct the information, with the intent to pressure the debtor into paying the discharged debt, "if proven at trial, would be sufficiently vexatious and oppressive to support at least a sanction in the amount of the plaintiffs' costs and expenses . . . ." Torres, 367 B.R. at 491.

In cases where no bad faith was found, the violations of the discharge were characterized as technical or unintended, or were quickly remedied.  For example, in In re Cruz, the court determined that a creditor did not act in bad faith, even though it obtained a default judgment for a discharged debt and entered into a settlement agreement on account of that judgment, because the creditor was not listed on the debtor's petition, and the court found that the parties believed the settlement agreement to be valid at the time it was entered into.  For this reason, the court determined that the violation was unintended.  In re Cruz, 254 B.R. 801, 816 (Bankr.S.D.N.Y. 2000); see also In re Dabrowski, 257 B.R. 394, 416 (Bankr. S.D.N.Y. 2001) (holding that

sanctions were not appropriate where creditor's actions were "technical and unintended violations of the Debtor's rights.")

In In re Thompson, 2007 WL 2406886 (Bankr.N.D.N.Y.Aug. 21, 2007), the court found that the City of Syracuse did not act in bad faith when it mailed the debtors notice of their intent to shut off the debtors' water even after the debtors' received a discharge.  Thompson, 2007 WL 2406886 at *4.  The court declined to find bad faith because the notice was sent on the same day as the notice of the discharge was received by the City, and upon learning of its mistake, the City terminated its collection efforts.  Id.

Here, Oren's violation of the discharge cannot be characterized as unintended.  To the contrary, Oren's submissions to the Court indicate he is fully aware that certain of the claims asserted in the State Court Action violate the Debtor's discharge.  For example, Oren writes, in his response to the Defendants' motion for judgment on the pleadings, that the defense of discharge in bankruptcy "was expected" with respect to his sixth cause of action, but that such a violation was minimal because it only requires "a three word 'discharge in bankruptcy' affirmative defense" and "involved no extra inconvenience or extra attorney fee[s]." (Cross-Mot. in Opp'n to Mot's for J. on the Pleadings at p. 70, Removed ECF No.24).

Oren's conduct does not reflect an unintended or technical violation of the Debtor's discharge; rather, it is similar to that found in Watkins, and alleged in Torres, i.e. a deliberate attempt by a creditor to circumvent the discharge to obtain payment of a discharged debt outside the bankruptcy case.  Further, Oren has not ceased his efforts to pursue his discharged claims, even after the Debtor reopened his bankruptcy case to bring this motion.  Instead, in his response to the Debtor's motion to hold him in contempt, Oren requests that the Court, in the event it "find[s] that the Debtor's Chapter 13 discharge is an absolute defense" to his causes of action,

dismiss his actions against Nicholas. (Cross-Application in Resp. to Mot. for Contempt, Bankr. at p. 6, ECF No. 83).

Under the circumstances of this case, it would be inappropriate to simply dismiss Oren's claims, with no further consequence to him.  Oren's pursuit of these discharged claims has necessarily hampered the fresh start Nicholas earned through the completion of his Chapter 13 plan and the receipt of his discharge.  The fact that Oren is a pro se litigant does not relieve him of the obligation to comply with the discharge injunction.  See Thomas and Agnes Carvel Foundation v. Carvel, 736 F.Supp.2d 730, 766 (S.D.N.Y. 2010) ("The fact that the targeted party is a pro se litigant does not immunize her from the consequences of violating court rules or other legal standards. . . .")  Moreover, his own pleadings make it clear that he was fully aware of this obligation and aware that he acted in violation of section 524.  Accordingly, because this Court finds that Oren's actions in violation of Nicholas's discharge are in bad faith, Nicholas is awarded attorney fees relating to the defense of Oren's third, fourth, and sixth causes of action.

The Debtor seeks punitive damages of at least $50,000.  "[T]he courts that have awarded punitive sanctions for violations of the discharge injunction require actions taken with either malevolent intent or a clear disregard and disrespect of the bankruptcy laws and that it is not sufficient to merely show the actions were deliberate."  In re Watkins, 240 B.R. at 680 (quoting In re Vazquez, 221 B.R. 222, 231 (Bankr.N.D.Ill. 1998)).  Punitive damages are appropriate for "particularly egregious creditor misconduct."  DiGeronimo, 354 B.R. at 644.  In DiGeronimo, the court found punitive damages appropriate, though in a lesser amount than were originally awarded, where a party secured a judgment against the debtor on a discharged debt and moved in state court to hold the debtor in contempt for failing to comply with the judgment, even after the

debtor reopened his bankruptcy case to assert that the financial obligations created by the judgment had been discharged.  Id. at 628-30.

The facts of this case are at least as egregious as those in DiGeronimo.  Here, not only did Oren seek to obtain payment on a discharged debt in state court, but he also sought to collaterally attack the final orders of this court fixing his claim, after his motions for reconsideration were denied, while his appeal was pending, and after it was dismissed. Oren's actions demonstrate "a clear disregard and disrespect of the bankruptcy laws."  Any doubt about the egregious nature of his conduct is laid to rest by Oren's own submissions to this Court, in which he acknowledges that his actions violate Nicholas's discharge.  Oren's continued litigation of his claim against Nicholas after it was paid in full under Nicholas's plan constitutes "particularly egregious conduct."  Accordingly, to vindicate the orders of this Court and to deter similar conduct by Oren in the future, this Court awards Nicholas punitive damages.

"[T]he purpose of punitive damage awards is to punish the defendant and to deter him and others from similar conduct in the future."  Vasbinder v. Scott, 976 F.2d 118, 121 (2d Cir. 1992) (citing Smith v. Wade, 461 U.S. 30, 54 (1983)).  However, the Court must "make certain that the punitive damages are reasonable in their amount and rational in light of their purpose to punish what has occurred and to deter its repetition."  Id. (quotingPacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 21 (1991)).  In assessing the damages appropriate to deter future contemptuous conduct by Oren, it is also significant to note that Oren has been a frequent pro se litigant in this Court.  A search of the court's CM/ECF system shows that Oren has litigated as a pro se creditor in six bankruptcy cases over the past twelve years.  Given his repeated presence in this Court, deterrence of future misconduct is all the more important.  Therefore, considering Oren's determined persistence in his efforts to obtain payment of a pre-petition debt,

notwithstanding his knowledge that it was discharged, a significant sanction is warranted.

Another relevant consideration in assessing the appropriate damages in this case is Oren's

request in his cross-application that sanctions against him be limited to $2,500.  If punitive

damages awarded do not exceed the amount Oren has already expressed a willingness to pay,

then the damages will be unlikely to serve as an effective deterrent.  Accordingly, Nicholas is

awarded punitive damages in the amount of $5,000.

III.    Oren's Cross-Application and Cross- Motion

On January 26, 2011, the day on which the Debtor's motion to hold Oren in contempt

was heard, Oren filed a "cross-application," seeking the following relief: 1) a "declarative"

judgment deeming his malicious prosecution claim outside the scope of the Debtor's discharge;

2) a summary dismissal of the Debtor's contempt motion; 3) an adjournment, in the event the

Debtor's motion was not dismissed, to permit Oren to commence a motion for reconsideration

pursuant to section 502(j); 4) alternatively, in the event the motion was not dismissed, ninety

days to commence a section 502(j) motion, an action to disgorge the money distributed under

Nicholas's Chapter 13 plan, and a motion to object to Nicholas's discharge; 5) denial, except

with respect to the Debtor, of the Defendants' motion to remove the State Court Action to this

Court; and 6) in the event this Court finds that Nicholas's discharge is an absolute defense to his

claims, a dismissal of all actions against Nicholas, a finding that any claims brought against

Nicholas were commenced in good faith, and a limitation of $2500 on any sanctions.  (Cross-

Application in Resp. to Mot. for Contempt, Bankr. ECF No. 83). [6]

Oren's cross-application is denied in its entirety.  Oren is not granted leave to commence

a motion pursuant to section 502(j) for reconsideration, to unwind Nicholas's Chapter 13 plan, or

to object to Nicholas's discharge.  A motion for reconsideration of an order allowing or

---

[6] Neither the Bankruptcy Rules nor the local rules of this Court permit cross-motions or cross-applications.

disallowing a proof of claim is governed by Bankruptcy Rule 9024, which incorporates Rule 60.

Except where a proof of claim has been entered without a contest, a motion for its

reconsideration based upon grounds set forth in Rule 60(b)(1)-(3) is subject to the requirement

that any such motion be made within one year of an entry of judgment. [7] In re Tender Loving

Care Health Services, Inc., 562 F.3d 158, 163 (2d Cir. 2009). Accordingly, because Oren's

claim was litigated--indeed, extensively-- and the one year time period has expired, any such

motion would be untimely. Oren has also presented no basis for this Court to unwind Nicholas's

Chapter 13 plan or to permit Oren to object to Nicholas's discharge at this point. The remainder

of the relief Oren seeks in his cross-application is denied as a result of the determination that the

Debtor's motion to hold Oren in contempt, and the Defendants' motion for judgment on the

pleadings, are granted.

Oren also filed a cross-motion in response to the Defendants' motion for judgment on the

pleadings. In his cross-motion, Oren seeks orders granting sixteen forms of relief, which may be

summarized as follows: 1) keeping Nicholas's bankruptcy case open for the purpose of hearing

Oren's various motions; 2) "belatedly scheduling" a hearing on Oren's March 7, 2008 cross-

motion; 3) granting Oren relief from the Order of the Court dated June 5, 2009; 4) recalculating

---

[7] Any motion for reconsideration by Oren would be pursuant to one of these three subsections of Rule 60, which provides as follows:

> (b) On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>> (1) mistake, inadvertence, surprise, or excusable neglect;
>> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

Although Rule 60(b)(6) permits reconsideration for "any other reason that justifies relief," it is well established that this provision may be invoked only where "the asserted grounds for relief are not recognized in clauses (1)-(5) of [Rule 60]." In re Calpine Corp., 363 B.R. 709, 711 (Bankr.S.D.N.Y. 2007); Nemaizer v. Baker, 793 F.2d 58, 63 (2d Cir. 1986)("As (b)(6) applies only when no other subsection is available, grounds for relief may not be mistake, inadvertence, surprise, or excusable neglect.")

Oren's claim against Nicholas's bankruptcy estate; 5) granting Oren the amount of interest on his claim against Nicholas's bankruptcy estate that he originally sought; 6) revoking Nicholas's discharge nunc pro tunc; 7) permitting Oren to sever his claims against Harvey Bernstein; and  8) in the event the Court finds in the Defendants' favor, permitting Oren to replead.  (Cross-Mot. in Opp'n to Mot's for J. on the Pleadings, Removed ECF No. 24).

Oren's cross-motion is also denied.  His attempts to relitigate, again, the calculation of his claim against Nicholas's bankruptcy estate are denied, for all of the reasons set forth in Judge Milton's March 31, 2010 Decision and Order denying Oren's motions for reconsideration, and for all the reasons discussed above.  Oren's request for a hearing on his March 7, 2008 cross-motion seeking disgorgement of Harvey Bernstein's broker fees is also denied.  On April 25, 2008, Judge Milton issued an Order authorizing the Trustee to pay Harvey Bernstein, "having considered the objection interposed by Matthew E. Oren," thereby denying Oren's cross-motion. Oren sets forth no basis for the revocation of Nicholas's discharge, and his request for that relief is denied.  The remainder of the relief sought in Oren's cross-motion is denied as a result of the determinations set forth in this decision.  Oren's request for leave to replead is denied because, given the undisputed facts and the relevant law discussed above, any such effort would be futile.

CONCLUSION

For the foregoing reasons, this Court holds that Defendants' motion to dismiss, and Debtor's motion to hold Oren in contempt for a willful violation of his discharge, are granted.  A separate order will issue.



**Dated: Brooklyn, New York**
**August 3, 2011**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**